# COURT OF APPEALS OF VIRGINIA

---

**Record No. 0850-25-3**

---

NATHANIEL ZACH HICKS

v.

COMMONWEALTH OF VIRGINIA

---

Present: Judges Causey, Raphael and Duffan

Opinion Issued July 28, 2026[*]

---

**FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL**
Sage B. Johnson, Judge

(Brandie I. Lester, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; C. David Sands, III, Senior Assistant Attorney General, on brief), for appellee.

---

**MEMORANDUM OPINION BY**
**JUDGE KEVIN M. DUFFAN**

Nathaniel Zach Hicks asks this Court to reverse the Bristol Circuit Court's conviction of aggravated malicious wounding, in violation of Code § 18.2-51.2. The court sentenced Hicks to 50 years' incarceration, with 25 years suspended. The two issues on appeal are (1) whether his guilty plea was knowingly, voluntarily, and intelligently made and (2) whether the circuit court properly sentenced him. Finding no error, we affirm.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

BACKGROUND[3]

I. The underlying offense

In early 2023, S.B.[4] was casually dating Hicks.[5] One evening in February 2023, the couple was at Hicks's home, which he shared with his mother. The couple drank vodka while watching a movie. At some point, Hicks wanted to have sex and became angry when S.B. declined. When S.B. wanted to leave, Hicks became angrier and started repeatedly punching S.B. in the face. The beating stopped when Hicks's mother called down wondering what was happening. Hicks pacified her by stating that they were watching a horror movie.

As S.B. crawled to the door, Hicks grabbed a large knife from under his wardrobe. Hicks ordered S.B. to remove her pants and lie down on the bed. She obeyed. As S.B. lay on the bed, Hicks stabbed around the outline of her body. Hicks then punched S.B. in the face, causing her to lose consciousness. When she woke up, S.B. was on her stomach near the bedroom door and Hicks was on top of her cutting her neck. S.B. screamed and in defense raised her left hand, which Hicks stabbed. Hearing S.B.'s screams, Hicks's mother came downstairs and found him over her. Hicks fled while his mother called 911.

---

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

[4] We use the victim's initials to protect her privacy.

[5] "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by [the appellant]. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022). "The rest remains sealed." *Id.*

Officers went to Hicks's home and found S.B. on the floor bleeding. She was transported to the hospital via helicopter. Meanwhile, officers located Hicks near his home. While the officers transported Hicks back to his house, he laughed, and stated that he killed S.B., stabbed the "bitch" a lot, "sliced her throat," and "she deserved it because she was a slut" and "a fucking whore." He stated that "he killed the bitch and that he would get out in five years, and he would kill again." S.B. survived her injuries but suffered from a broken orbital bone, four fractures to her neck, and significant stab wounds on her neck, left hand, back, and breasts, all of which became scarred.

## II. The plea hearing

In August 2023, Hicks was indicted by a grand jury for aggravated malicious wounding under Code § 18.2-51.2. Later that month, Hicks appeared at a plea hearing where he intended to enter either an *Alford*[6] plea or a plea of nolo contendere. There was no written plea agreement between Hicks and the Commonwealth, but both parties agreed on the record that in exchange for his plea, the Commonwealth would not pursue additional charges.

Before accepting his plea, the circuit court conducted a plea colloquy with Hicks to ensure that it was knowing, voluntary, and intelligent. During the colloquy, Hicks's counsel confirmed that Hicks reviewed the facts of the case and discussed with his counsel "each and every element" of the charge that the Commonwealth would have to prove beyond a reasonable doubt. The circuit court reiterated to Hicks that his counsel stipulated to this, and Hicks responded that he understood the stipulation.

---

[6] *North Carolina v. Alford*, 400 U.S. 25 (1970); *see also Cellucci v. Commonwealth*, 77 Va. App. 36, 43 n.2 (2023) (en banc) ("When offering an *Alford* plea of guilty, a defendant asserts his innocence but admits that sufficient evidence exists to convict him of the offense." (quoting *Slusser v. Commonwealth*, 74 Va. App. 761, 766 n.2 (2022))).

Hicks and his counsel also discussed any possible defenses he might have. He stated to the court that he understood his right to a jury trial, to confront witnesses against him, and his right against self-incrimination. Hicks acknowledged that he would give up those rights, as well as the right to an appeal, if he pleaded guilty or no contest to the charge.

The court then paused the proceedings to allow Hicks to speak with his attorney about whether he wanted to enter a plea of guilty with an *Alford* stipulation or a plea of nolo contendere/no contest. Although the record is silent as to whether Hicks and his counsel had a private discussion off the record, after the pause the court asked Hicks if he was "ready to enter [his] plea." Ultimately, Hicks pleaded no contest to aggravated malicious wounding. Hicks assured the court that he was not under the influence of alcohol, narcotic drugs, or other controlled substances, and that he understood the proceedings.

The circuit court also reviewed the "Guilty Plea Questionnaire" with Hicks. Hicks stated that he understood that the maximum punishment for aggravated malicious wounding was life imprisonment. The court also informed Hicks that he could be fined up to $100,000, plus court costs. Hicks stated that he understood that his sentence would be in the court's discretion "from [one] day in jail up to life in the penitentiary."

The questionnaire itself stated:

> [Question 25:] Do you understand that the maximum punishment
> for this/these crime(s) is [Blank 1] years imprisonment and a fine
> of $ [Blank 2] plus all court costs? [Blank 3].

Hicks wrote "Life" in the first blank and crossed out the following word "years." Hicks left both blanks two and three empty.

The questionnaire also included:

> [Question 26:] Do you understand that the criminal conviction that
> will result from this guilty plea may, in addition to confinement
> and/or fine, carry a wide variety of consequences, including but not
> limited to deportation, exclusion from admission or denial of

- 4 -

naturalization into the United States, civil commitment, civil forfeiture, the loss of right to vote, disqualification from public benefits, ineligibility to possess firearms, dishonorable discharge from the Armed Services, loss of driving privileges, and loss of business licenses? [Blank].

Hicks indicated "yes" on the blank.

Hicks, who had completed several years of college, affirmed that he read the questions on the questionnaire, understood them, and answered them truthfully. He stated that he had had sufficient time to discuss the questions with his attorney. He assured the court that he answered the questions freely and voluntarily. The circuit court accepted Hicks's plea as made freely and voluntarily and convicted him of aggravated malicious wounding.

### III. The sentencing hearing

At sentencing, the Commonwealth moved to admit the exhibits that the circuit court marked and admitted during the plea hearing, the victim impact statements, and the discretionary sentencing guidelines. According to the victim impact statement from S.B.'s grandmother, S.B., for months, tried to control the pain from her neck brace pressing into her neck injuries and was coping with nightmares where she thought Hicks was in her room to kill her. S.B. continued to suffer from nightmares at the time of sentencing.

Todd Hicks (Todd), Hicks's father, testified that Hicks was a "great kid." Todd never had issues with Hicks until his mental health problems began at 15 years old.[7] Hicks later developed alcoholism.[8] However, since his incarceration, Todd believed that Hicks was thinking

---

[7] The mental health information narrative on Hicks's offender personal history forms indicated that he started receiving mental health treatment at 13 years old. He has been hospitalized, in outpatient programs, and medicated for his mental health since then.

[8] Hicks started drinking alcohol when he was 21 years old and was "drinking heavily to the point of intoxication on a regular basis." He is also a self-admitted alcoholic.

more clearly and was a "completely changed person." Upon release, Hicks's family intended to support him in remaining sober.

On cross-examination, Todd was asked if Hicks discussed S.B. in a disparaging way. When Todd responded that they tried not to talk about S.B., the Commonwealth asked if it was because "big brother[] [was] watching[?]" The Commonwealth also questioned Todd on whether Hicks "talked about [whether] the Chief Deputy Commonwealth's Attorney had a hot daughter that he would like to . . . '[fuck] when he gets out of prison[.]'" Todd could not recall.

In allocution, Hicks was remorseful and thankful that S.B. survived. He asked the circuit court to consider that he was intoxicated when he attacked S.B. He stated that he struggled with mental health and alcoholism and claimed that the attack was a "drunken mistake." He said that he "black[ed] out" during the altercation and that he had never blacked out before. He promised to maintain his sobriety and monitor his mental health issues upon release from incarceration.

Hicks said that he had no prior criminal history except for driving under the influence. Before pronouncing its sentence, the circuit court stated: "[w]ell, [your presentence report is] important as . . . it relates to your sentencing because [you have] no prior criminal history other than [one] driving under the influence and the [c]ourt should and does take that into consideration." But Hicks's statement in the presentence report that he was "glad [S.B.] is okay" struck the court as "unintelligent."

The court ended its explanation of Hicks's sentencing with the following:

> "[T]he [c]ourt is concerned while giving you credit and not giving you life in the penitentiary, giving you credit for mitigating circumstances as [it] relates to your prior criminal history of being insignificant. The [c]ourt does concern itself with [S.B.'s] safety, her family's safety, and most importantly, the community as a whole, their safety."

The court sentenced Hicks to 50 years' incarceration, with 25 years suspended.[9]  It noted

that it departed from the guidelines' recommendation "because of the aggravating nature of the

attack on the victim and lack of remorse."  Hicks appeals.

ANALYSIS

I.  The circuit court did not err when accepting Hicks's no contest plea.

Hicks argues on appeal that the circuit court erred in accepting his no contest plea

because it was not made knowingly, voluntarily, and intelligently.  Hicks admits that he did not

move to withdraw his plea; thus, he did not preserve this issue.  He asks us to apply the good

cause and ends of justice exceptions to Rule 5A:18. We decline to do so.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an

objection was stated with reasonable certainty at the time of the ruling, except for good cause

shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "The Court may only

invoke the 'good cause' exception where an appellant did not have the opportunity to object to a

ruling in the trial court; however, when an appellant 'had the opportunity to object but elected

not to do so,' the exception does not apply."  *Perry v. Commonwealth*, 58 Va. App. 655, 667

(2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in

the extraordinary situation where a miscarriage of justice has occurred."  *Holt v. Commonwealth*,

66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215,

220-21 (1997)).  The purpose behind the ends of justice exception "is to require that objections

be promptly brought to the attention of the trial court with sufficient specificity that the alleged

---

[9] The statutory range for aggravated malicious wounding is 20 years' imprisonment to a life term.  Code §§ 18.2-10, 18.2-51.2.  The discretionary sentencing guidelines recommended a sentencing range between 5 years, 10 months and 13 years, 1 month.

error can be dealt with and timely addressed and corrected when necessary." *Redman*, 25 Va. App. at 220.

The record shows that Hicks had an opportunity to move to withdraw his no contest plea. The circuit court accepted Hicks's plea on August 23, 2023, and continued the matter for sentencing. Hicks claims that he was unaware of the alleged issues with his plea—namely, a missing written response and possible missing break taken during the colloquy—until the sentencing hearing on January 25, 2024, almost five months later. He does not explain how he discovered the issue or why he discovered it much later. Nor did Hicks move to withdraw his plea within the 21 days after the entry of his sentencing order. Code § 19.2-296. Although Hicks submitted his appeal before the end of these 21 days, he did not specifically withdraw his plea on the appeal notice.

Consequently, Hicks had ample time and opportunity to withdraw his no contest plea, but chose not to. Therefore, we find that this issue is waived under Rule 5A:18 and that the ends of justice and good cause exceptions are inapplicable to the present facts.[10]

---

[10] On the merits, Hicks argues that he did not "fully understand" the collateral consequences of his plea. "For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, *but not the collateral*, consequences of his plea." *Brown v. Commonwealth*, 297 Va. 295, 302 (2019) (emphasis added) (quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)). Here, the circuit court reviewed the direct consequences of his plea, and he assured the circuit court he understood those consequences. Hicks verbally indicated that he knew the possibility of facing life in prison, plus a fine up to $100,000. On the guilty plea questionnaire, he indicated the same, and that he might also lose certain civic rights and public benefits. Hicks, who had the benefit of "several years of college," assured the court that he had read and understood the guilty plea questionnaire and answered it truthfully. Thus, Hicks's asserted lack of understanding of the collateral consequences of his plea is unsupported by the record.

II. The circuit court did not abuse its discretion when making its sentencing decision.

A. The circuit court's sentence fell within the statutory range.

Hicks argues that the circuit court abused its discretion by imposing an active sentence significantly above the sentencing guidelines—25 years' incarceration. We disagree.

"It is well settled that we apply the abuse of discretion standard of review to a trial court's sentencing decision." *Khine v. Commonwealth*, 82 Va. App. 530, 558 (2024).

"The sentencing guidelines are *advisory only* and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999) (emphasis added). "[T]he recommended sentencing ranges contained in these *discretionary guidelines* are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004) (emphasis added). Furthermore, a judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F).

Accordingly, we may consider only whether the sentence fell outside the permissible statutory range. *See Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994).

Here, the discretionary sentencing guidelines recommended a sentencing range between 5 years, 10 months to 13 years, 1 month. But the permissible statutory limit was a life sentence. Code §§ 18.2-10, 18.2-51.2. As a result, the circuit court was well within its discretion to sentence Hicks to 50 years' imprisonment, with 25 years suspended, for an active 25 years' imprisonment.

B. The circuit court's sentencing explanation was not vague.

Hicks argues that the circuit court's reasoning for deviating from the sentencing guidelines was "unclear and vague." This is not supported by the record.

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case — those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* Even so, "a trial court *is not required* to give findings of fact and conclusions of law." *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982) (emphasis added).

The circuit court considered all the evidence before it, including the victim impact statements, the presentencing report, the body worn camera videos, and Todd's testimony. The court balanced Hicks's mitigating evidence against the gravity and brutality of his attack on S.B., which had left her with physical scars and emotional trauma. The court indicated it was troubled by Hicks's belief that S.B. was "okay," which it found reflected Hicks's "callousness" toward her. It took into consideration that Hicks told the arresting officers that he was "glad" he had killed S.B. and that he was "going to do this again" when he is released from incarceration. The court noted his inappropriate sexual references towards a prosecutor's family member during a jail phone call, which demonstrated to the court an inclination toward future criminal offenses.

The court closed its explanation on the fact that it "concern[ed] itself with [S.B.'s] safety, her family's safety, and most importantly, the community as a whole, their safety." Although the court need not give findings of fact and conclusions of law in making its sentencing decisions, the record belies Hicks's assertions that the sentencing explanation was vague.

C. The circuit court considered mitigating circumstances in its sentence.

Last, Hicks argues that the court failed to properly consider mitigating evidence. This is also unsupported by the record.

"It is within the trial court's purview to weigh any mitigating factors presented by the defendant." *Khine*, 82 Va. App. at 558 (quoting *Keselica v. Commonwealth*, 34 Va. App. 31, 36

(2000)). A trial court is "not required to give controlling effect to the mitigating evidence." *Reid v. Commonwealth*, 256 Va. 561, 569 (1998) (quoting *Correll v. Commonwealth*, 232 Va. 454, 468-69 (1987)).

The court expressly acknowledged—and considered—Hicks's mitigating circumstances, including his age and minimal prior criminal history:

> Well, [the presentence report is] important as . . . it relates to your sentencing because you're a young man with no prior criminal history other than an alcohol related driving under the influence and *the [c]ourt should and does take that into consideration . . .* the [c]ourt is concerned while giving you credit and not giving you life in the penitentiary, giving you credit for mitigating circumstances as [it] relates to your prior criminal history of being insignificant.

(Emphasis added). Though it had no obligation to do so, it is clear the circuit court did state the mitigating factors present, took them into consideration, and accorded them weight.

The circuit court sentenced Hicks to well below the statutory maximum of life imprisonment set by the legislature. Code §§ 18.2-10, 18.2-51.2. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Having reviewed the record, including the Commonwealth's evidence at the sentencing hearing and the circuit court's sentencing reasoning, we decline to find an abuse of discretion by the circuit court.

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*